IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| ISREAL EMORY WALTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-00278 |
| | ) | |
| MICHAEL FELICIES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S STATEMENT OF MATERIALS FACTS**
**TO WHICH THERE REMAINS NO ISSUE TO BE TRIED**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant Michael Felicies hereby submit this Statement of Material Facts To Which No Genuine Issue Remains To Be Tried, as follows:

1. Plaintiff Isreal Emory Walters ("Plaintiff" or "Walters") filed his complaint asserting Fourth Amendment claims under 42 U.S.C. § 1983 and state law claims for false imprisonment and malicious prosecution following his arrest by Defendant Michael Felicies ("Officer Felices") on November 17, 2023. (See generally doc. 1, Compl.).

2. Officer Felicies was police officer for the City of Grovetown who arrested Walters for conspiracy in connection with a plot to use a drone to "deliver drugs to a local prison" in Grovetown, Georgia.(Id., ¶ 25).

3. The crux of Walters's claims is his assertion that there was no probable cause for his arrest and prosecution. (Id., ¶¶ 72, 88).

4. He also alleges that Officer Felicies "omitted exculpatory information" from a warrant application. (Id. ¶ 78).

5. At approximately 11:20 p.m. on November 17, 2023, Officer Felicies was on duty in a marked patrol vehicle on Robinson Avenue in the City of Grovetown. (Def. Exh. 1, Felicies Decl., ¶ 2). The Declarations of Michael Felicies and Brittany Nelson have also been filed as doc. 20 to include their body camera videos from the relevant incident and arrest.

6. Felices observed a vehicle that appeared to be broken down. A man and woman outside the vehicle were arguing with each other next to a cemetery on West Robinson Avenue. (Id. ¶ 3).

7. Officer Felicies was wearing a body camera that captured the events leading up to and following Walters' arrest. (Felicies Decl., ¶ 13). A true and accurate copy of the video from Felicies' body camera has been filed manually with Felicies' Declaration as Exhibit B thereto. (doc. 20).

8. Officer Felicies saw the man and the woman moving away from the vehicle and towards Robinson Avenue's intersection with Railroad Avenue. He drove past the man and the woman before turning around to investigate. (Id. ¶¶ 3-4).

9. As Felicies turned his vehicle around, he saw the pair separate. He then spoke with the woman, Jocelyn Apaisa[1] ("Apasia"), at the corner of Railroad Avenue and E. Robinson Avenue. (Id. ¶ 5). Apasia explained that she was going back to the broken-down vehicle and would then head to a nearby friend's house. (Id).

10. Officer Felices then drove down Railroad Avenue to locate the man, later identified as Gerlad Jiminez (Jiminez"), who was wearing dark clothing and was using his cell phone on speaker mode. (Id., ¶ 6).

[11] Apasia's first name is spelled "Jocelyn" in Walters' deposition transcript, and this spelling is continued here for consistency rather than certainty.

11. Felices radioed his colleague, Officer Brittany Nelson, and asked her to make contact with Apaisa. (Felicies Decl., ¶ 7).

12. Officer Felicies then made contact with Jiminez who was still walking on Railroad Avenue headed away from East Robinson Avenue. (Id. ¶ 7-8).

13. Railroad Avenue runs parallel to the railroad and perpendicular to Robinson Avenue. This street has few residences and no businesses on it. It has minimal lighting and becomes a dirt road for the final third of its length where it dead ends near the back of Augusta State Medical Prison. (Felicies Decl., ¶ 9).

14. Jiminez told Officer Felices his car had broken down and that his wife was just "stressing [him] out" so she went to the car and he "went on a walk." (Felicies Decl., Exh. B, at 00:00:01-00:00:30). He also explained he lived at Creekside and also provided identification confirming he lived on Sockeye Court in that neighborhood. (Id., at 00:00:16; 00:01:08; see also Felicies Decl., ¶ 10).

15. Sockeye Court is in the Creekside Estates neighborhood, which is approximately one mile from 108 West Robinson in the opposite direction of Railroad Avenue. To return home, Jimenez and Apasia would have needed to head away from Railroad Avenue and retraced their route up West Robinson Avenue. (See Felicies Decl., ¶¶ 10-11).

16. Jiminez told Officer Felices he had called a friend to pick him and his wife up. The friend turned out to be Walters, who phoned Jiminez as he was talking with Officer Felicies as they talked on the roadside. Jiminez had apparently sent Walters an address so that he could come to Jiminez. (Id. at 00:00:43-00:00:55; 00:27:39-00:27:50).

17. Jiminez put Walters on speaker phone as he told Felicies he was going to engage in a three-way phone call with Walters, whom Jiminez called "Izzy," and his wife, whom Jiminez called "Jos." (Id. at 00:01:24-00:01:33).

18. As Felicies continued questioning Jiminez, he was able to hear the three-way call between Jiminez, Walters, and Apaisa.[2] Jiminez stated that he and Apaisa, whom he called his wife, had walked different directions because they got an "argument." (Id. at 00:02:35).

19. Apaisa interjected about the alleged argument and said, "Why'd you tell him we were arguing?" (Id. at 00:02:52). She then proceeded to question why Jiminez would say they were arguing when she plainly thought otherwise. (Id., 00:02:52-00:003:30).

20. Significantly, after some back-and-forth between the couple, Apaisa asked her husband, "What about the job?" (Id. at 00:03:38-00:03:55). Jiminez responded, "Well. Hold on. I don't, I don't, I don't got to do that. I mean, I just do it later on. I'm really waiting on Izzy to come pick me up." (Id). This exchange clearly indicated something more was going on.

21. After Jiminez ended the three-way call, Officer Felicies told him that he thought the activity was suspicious, considering he and his wife had gone in different directions and that he was wearing dark clothing in a dark area at night. Jiminez apologized and asked Officer Felicies for a ride. (Felices' Decl., Exh. B, at 00:04:30 -00:04:52).

22. In response to Jiminez's request for a ride, Felicies replied that he would need to search Jiminez for weapons first. (Id., at 00:04:43-00:04:52). Jiminez gave Officer Felicies permission to pat him down for weapons and handed over a knife from his fanny pack. (Id. at 00:05:00).

23. Felicies then asked, "What do you have in the bag?" (Id. at 00:05:25). Jiminez responded, "I got my drone and some bags." (Id. at 00:05:28).

[2] During his deposition, Plaintiff confirmed that the phone conversation captured on Felicies' body camera footage was a three-way call between Jiminez, Apaisa, and Plaintiff. (See Pl.'s Dep. at 66:5-8).

24. Felicies, an experienced drone pilot, then engaged in small talk about drones with Jiminez, who claimed that he used the drone to make videos as a way to make money. (Id., at 00:05:44).

25. When Felicies asked Jiminez what he was filming, Jiminez responded, "Like tonight? I'm not filming anything. I was with my girl. Yeah. But I'm not filming nothing." (Id.).

26. During their conversation, Officer Felicies learned that Jiminez did not have a commercial pilot's license to fly the drone. (Felicies Decl., Exh. B, at 00:06:01-00:06:17).

27. Felicies asked to see the drone. (Id. at 00:06:34-00:06:52). During this time, Officer Nelson—who had been questioning Apaisa nearby—arrived as Jiminez began showing Felicies a drone inside his backpack. (Id. at 00:06:45-00:07:05).

28. When Jiminez opened the backpack, Felicies immediately smelled marijuana and decided to detain Jiminez. (Id. at 00:07:00-00:07:30).

29. Officer Felices then referenced Apaisa's statement during the three-way call about "the job" by asking Jiminez, "What job you trying to do?" … "You had me on speaker when you was talking about you trying to get the job done." (Felicies Decl., Exh. B, at 00:07:37-00:07:45).

30. During the search of Jiminez's backpack, the officers located more than a pound of marijuana and more than a pound of methamphetamine. (Id. at 00:09:40-00:10:51).

31. Felicies also discovered the drone had a release mechanism which could be used to drop the packaged drugs over the fence at the nearby Medical Prison. (Id. at 00:10:00-00:10:50, 00:17:05-00:17:15).

32. Based on this evidence, Felicies Mirandized and arrested Jiminez. (Id. at 00:13:50-00:14:30).

33. A few minutes later, the officers saw Walter's car approaching the scene. Walters drove past Officer Nelson's vehicle before coming to a stop. (Def. Exh. 2, Nelson Decl. Exh. A at 00:11:45-00:12:30). Officer Nelson initiated a consensual encounter with Walters, in which she immediately identified herself as a law enforcement officer. (Id).

34. Walters was in the driver's seat, and Apaisa was in the front passenger seat. (Id)

35. Like Felicies, Officer Nelson was wearing a body camera which captured the events leading up to and following Walters's arrest. (Nelson Decl. ¶ 4). A true and accurate copy of the video from Officer Nelson's body camera has been manually filed wither Declaration as Exhibit B thereto. (doc. 20).

36. When Officer Nelson first encountered Walters, she asked if he was headed somewhere. He responded, "Yeah, just down here." Nelson followed up by asking if Walters was meeting somebody, but Walters was evasive and said, "I don't know. I'm kind of turned around. … I'm not from Grovetown" (Nelson Decl., Exh. A, at 00:12:10-00:12:22).

37. Besides not answering the question, Walters clearly knew exactly who he was planning to meet. (Felicies Decl., Exh. B at 00:00:43-00:00:55 & 00:27:39-00:27:50).

38. Officer Nelson decided to detain Walters and Apasia while the investigation continued. (Nelson Decl. Exh. A at 00:13:40-00:13:48).

39. Nelson informed Walters that he was being detained and asked him if he had any weapons; Walters responded, "I have a gun right there…in the center console." (Nelson Decl., Exh. A, at 00:13:40-00:14:02). Nelson located a Glock 9mm pistol in the car's center console area. (Id. at 00:16:20).

40. Officer Nelson also located in the center console a crushed pill in a plastic baggie. (Id. at 00:37:30 & 00:41:45).

41. The officers were understandably suspicious when Walters—whom Nelson had found with Apaisa, a gun, and what appeared to be unlabeled pill in his car—had come to Jiminez's exact location on "the dark roadway leading … to the medical state prison" within minutes of the officers' discovery of Jiminez as he walked toward the Medical Prison with a drone equipped to drop the illegal drugs he had over the fence at the prison. (Def. Exh. 3, Felicies' Dep. at 21:6-22:8). Of note, Walters told Nelson that he was lost even though it was plain that he had driven down Railroad Avenue with Jiminez's wife looking to find Jiminez. (Nelson Decl. Exh. A at 00:12:10-00:12:20).

42. After being handcuffed, Walters tried to talk his way of the situation. Once Mirandized (id. at 00:18:03-00:18:37*)*, Walters told officer Nelson that he knew "Jay" (Jiminez) from working together when they had been in high school. (Id. at 00:19:02-00:19:20).

43. Walters then told Officer Nelson he did not know Apaisa "at all" which later turned out to draw his credibility into further doubt. (Id. at 00:19:16-00:19:25).

44. Officer Felicies interviewed Apaisa while Officer Nelson spoke with Walters. After being Mirandized, Apaisa explained she was there to help her husband get "his car back home." (Felicies Decl., Exh. B at 00:22:20-00:23:19).

45. When Felicies asked Apasia about "the job" she had inquired about during the three-way call, Apasia claimed they were in the area because they were "shooting" a video. (Id. at 00:26:23-00:26:29). This obviously conflicted with her husband's statement to Felices where he denied doing any video work that night. (Id. at 00:05:44: "I'm not filming anything. I was with my girl. Yeah. But I'm not filming nothing.").

46. When asked about Walters, Apaisa told Officer Felices that he was her sister's "boyfriend." (Id. at 00:27:25).

47. Officer Felices contacted investigative lieutenant named William Loomer at the City police department before arresting Walters and Apasia. (Felicies' Dep., 27:9-15). He told Loomer what he learned from his investigation, and they collectively agreed that the proper charge for Apasia and Walters was conspiracy, though further investigation would determine if other charges were also appropriate. (Id., 51:3-22).

48. Before arresting Apaisa, and Walters on charges of conspiracy, the officers wanted to see if any of the three suspects might cooperate. (Felicies' Dep. at 50:24-51:22).

49. Felicies Mirandized Walters (Felicies Decl., Exh. B at 00:41:55-00:42:10), who initially declined to make any statement. (Id. at 00:42:10).

50. Walters later reinitiated conversation with Felicies, asking, "Could you guys go ahead and ask me what you gotta [sic] ask me?" (id. at 01:02:00).

51. Felicies obliged and, in an effort to probe contradictions between Walters and Apaisa's statements. Walters told Felices, "I just met [Apaisa]." (Id. at 01:04:01). Walters then claimed to have first met Apaisa "a week or two ago." (Id. at 01:04:45).

52. Walters confirmed he was not honest with the officers about his relationship with Apasia during his deposition when he testified he had gone to Jiminez and Apasia's home in Grovetown at least twice before the arrest, ostensibly to meet Apasia's sister. (Def Exh. 4, Walters Dep., 50:17-53:5; 54:5-10; 55:20-24). The first visit lasted one or two hours, and he talked with the couple and drank. (Id., 50:17-53:5).

53. Though Walters denies he dated Apasia's sister, he admits he "hooked up" with her twice for sex. (Id., 56:2-21).

54. Walters also lied to Officer Nelson he did not know Apasia at all. (Nelson Decl., Exh. B, at 00:19:16-00:19:25).

55. After transporting Walters to the police station, Felicies applied for an arrest warrant, completed an affidavit, appeared before a magistrate via videoconference, and testified to the reasons he believed there was probable cause to arrest Walters for conspiracy to distribute methamphetamine. (Felicies' Dep. at 17:8-19:11, 20:2-22:8, 35:16-36:18).

56. The magistrate issued the arrest warrant, stating, "For sufficient causes made known to me in the above affidavit ***and from other oral testimony given under oath***, you are hereby commanded to arrest Isreal Emory Walters." (Felicies' Dep. Exh. 1 (emphasis added)).

57. Of note, Officer Felicies specifically informed the magistrate about the three-way speaker phone conversation where Apasia asked her husband, "What about the job?" He also described inconsistent and conflicting statements given by Jiminez, Apaisa, and Walters, including Walters's claims he was lost or "turned around" and that he had only known Apaisa. (See Felicies' Dep. at 17:8-19:11, 20:2-22:8, 35:16-18).

58. When asked in deposition whether he had provided any additional information beyond the warrant affidavit, Officer Felicies testified:

> Yes, sir. I swore to the to the events of my probable cause from Mr. Jiminez's charges and how everything started there which led to Mr. Walters
> ….
>
> Mr. Walter's was believed to be on the phone with Mr. Jiminez… I explained that while they were -while he was on conversations with Mr. Jiminez and his wife, there was mention of Mr. Jiminez completing the job and that…they were talking about transporting and trafficking that those narcotics there. And I also explained to the magistrate that while I was speaking with the three, Mr. Jiminez, Mr. Walters, and Ms. Apaisa, they all had conflicting stories as to how they knew each other and where they met up and whatnot…I had reasonably believed that they had been trying to work out a story, a plan, but they couldn't come up with the absolute story that they were going to settle on and that they were trying to lie about what they were actually doing.

(Def. Dep. at 19:5-10, 21:9-22:22:8).

59. There is no evidence that Officer Felicies made any material misstatements or omitted any relevant facts necessary to support the warrant.

60. Plaintiff knows of no reason why Officer Felicies would want to harm him. (Walters Dep. 80:9-11).

61. A Georgia grand jury indicted Walters for trafficking methamphetamine in violation of O.C.G.A. § 16-13-31. (Def. Exh. 5, Superior Court Indictment).

62. This charge was later dismissed by a nolle prosequi on March 5, 2025. (Compl. ¶ 85). The dismissal coincided with the end of the criminal case against Jiminez in this Court.

63. Officer Felicies' suspicion that Jiminez was trafficking narcotics proved accurate. Jiminez was indicted in this Court for possession with intent to distribute methamphetamine. See United States v. Jiminez, Case No. 1:24-CR-00052-DHB-BKE, doc. no. 1 (Sept. 4, 2024). Jiminez pled guilty and was sentenced to 60 months of imprisonment. Id., doc. no. 32 (March 6, 2025).

This 17th day of August, 2026.

/s/ Scott W. Kelly
SCOTT W. KELLY
Georgia Bar No.: 413115
JOHN E. PRICE
Georgia Bar No.: 142012
*Attorneys for Defendant*

FULCHER HAGLER LLP
One Tenth Street, Suite 700
Augusta, GA 30903-1477
(706) 724-0171
skelly@fulcherlaw.com
jprice@fulcherlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 17th day of August, 2026.

/s/ Scott W. Kelly
SCOTT W. KELLY